IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION


FREDRICK E. CHEATHAM                                                    PLAINTIFF


         v.                           CIVIL NO. 09-4007


MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                          DEFENDANT

## MEMORANDUM OPINION

Plaintiff, Fredrick E. Cheatham, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. § 405(g).

## I.     Procedural Background:

Plaintiff filed his current applications for DIB and SSI on November 4, 2005, alleging an inability to work since July 15, 2001, due to severe asthma and arthritis.[1] (Tr. 96). For DIB purposes, Plaintiff maintained insured status through June 30, 2005. A video administrative

---

[1] The court notes the ALJ listed the application date as October 18, 2005. (Tr. 13). The record also indicates Plaintiff filed prior applications for DIB on December 26, 2001, and September 8, 2003. (Tr. 26, 30).

hearing was held on June 5, 2007, at which, Plaintiff appeared with counsel and testified. (Tr. 355-379). Two witnesses and a vocational expert also testified at this hearing.

By written decision dated March 28, 2008, the ALJ found that during the relevant time period Plaintiff had an impairment or combination of impairments that were severe. (Tr.15). Specifically, the ALJ found Plaintiff had the following severe impairments: asthma and degenerative joint disease. However, after reviewing all of the evidence presented, he determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 16). The ALJ found Plaintiff retained the residual functional capacity (RFC) to perform a full range of light work. (Tr. 16). With the help of vocational expert testimony, the ALJ determined Plaintiff could perform his past relevant work in housekeeping. (Tr. 18).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on January 24, 2009. (Tr. 3-5). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 4). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 7, 8).

## II.     Evidence Presented:

At the administrative hearing on June 5, 2007, Plaintiff testified he was forty-nine years of age and obtained a high school education. (Tr. 358). The record reflects Plaintiff's past relevant work consists of work in assembly, housekeeping and construction. (Tr. 106, 377).

The pertinent medical evidence in this case reflects the following. On January 27, 2001, Plaintiff sought treatment in the Christus St. Michael Health System (St. Michael) emergency room for a cough and feeling achy all over. (Tr. 169-174, 228-231). Plaintiff reported a cough

for the past three weeks. Plaintiff was diagnosed with bronchitis and sinusitis and prescribed medication. Plaintiff was also given a work excuse for three days.

On February 1, 2001, Plaintiff sought treatment in the St. Michael emergency room for chills, sweating and a runny nose. (Tr. 175-180, 227, 218-220). Plaintiff was noted to smell of alcohol and had poor eye control. Plaintiff was diagnosed with sinusitis and an upper respiratory infection and prescribed medication. (Tr. 179-180).

On May 22, 2001, Plaintiff entered the Wadley Regional Medical Center (Wadley) emergency room complaining of shortness of breath. (Tr. 221-226). Plaintiff reported he smoked. Plaintiff was treated for an acute asthma exacerbation and discharged home in improved condition. (Tr. 223).

On November 24, 2001, Plaintiff sought treatment at the Wadley emergency room for trouble breathing, moderate wheezing and a cough. (Tr. 209-212). Plaintiff reported he was having to use his inhaler more often. Plaintiff was diagnosed with asthma, treated and prescribed medication.

On April 6, 2002, Plaintiff entered the Wadley emergency room complaining of shortness of breath and a cough that had been worsening over the past two to three weeks. (Tr. 203-208). Plaintiff was noted as positive for alcohol. (Tr. 204). Plaintiff was diagnosed with acute dyspnea; and probable GERD versus alcoholic gastritis.

On September 9, 2002, Plaintiff sought treatment in the Wadley emergency room for right foot and ankle pain. (Tr. 198-202). Plaintiff reported he hurt his foot at work when he rode down a ladder with his foot in the rungs. (Tr. 201). Plaintiff was unable to bear weight on his

-3-

foot. X-rays of Plaintiff's right foot and ankle were normal. (Tr. 202). Plaintiff was diagnosed with a contusion of the right foot and sprain of the right ankle.

On December 6, 2003, Plaintiff underwent a consultative examination performed by Dr. Chris Woodard. (Tr. 181-183). Plaintiff reported he applied for disability due to limitations of activity and work due to asthma and arthritic changes. Plaintiff complained of arthritis and weakness in his right hand. Plaintiff reported he was able to work with his current level of dyspnea, as long as he was able to get to his Albuterol inhaler. Plaintiff's medications consisted of Albuterol, as needed, on a daily basis. Plaintiff reported he smoked one package of cigarettes a day. Plaintiff reported chest discomfort after an asthmatic episode.

Upon examination, Dr. Woodard noted Plaintiff had no cough or shortness of breath. Dr. Woodard noted Plaintiff was able to get on and off of the examination table without difficulty or assistance. Plaintiff's lungs were clear to auscultation and percussion; his breath sounds were normal and symmetric; and no wheezes, rhonchi or crackles were noted. (Tr. 182). Plaintiff had a normal gait and station. Dr. Woodard noted Plaintiff was able to stand on heels and toes without difficulty; to squat all the way down and rise up without difficulty; and to bend all the way over and get back up without difficulty. Dr. Woodard noted no evidence of inflammation, effusion or swelling in any of the joints tested. Plaintiff's motor strength was 5/5 in all muscle groups tested and his sensory exam was symmetric and normal. Plaintiff's fine finger movements were intact and he had a normal ability to handle small objects and button buttons on clothing. Dr. Woodward's impression states:

> 1. A 46-year old male with medication control asthma versus new onset COPD vs. "cardial asthma" due to coronary artery disease with angina.

AO72A
(Rev. 8/82)

> 2. Active arthritis of the right fourth digit, proximal interphalangeal joint for which the claimant will take over the counter analgesics. He also has evidence of previous joint inflammation with synovial thickening of that particular PIP joint. Claimant complains of a reactive arthritis and may possibly have rheumatoid arthritis with concomitant lung involvement, as rheumatoid lung and dyspnea.

(Tr. 182).

On January 15, 2004, Dr. Alice Davidson, a non-examining, medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry fifty pounds, frequently lift or carry twenty-five pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; and could push or pull unlimited, other than as shown for lift and/or carry. (Tr. 269). Dr. Davidson noted that pulmonary functions tests revealed good breathing capacity. (Tr. 189-196). Dr. Davidson noted Plaintiff also alleged pain due to arthritis and that an exam performed in December of 2003 revealed good range of motion of all joints except the fourth finger on the right hand which appeared swollen with synovial thickening and loss of motion. Dr. Davidson opined Plaintiff had an unlimited ability to reach, handle and feel. Dr. Davidson opined Plaintiff's fine manipulation with the right hand could only be done occasionally due to arthritic changes of the fourth finger. Plaintiff was also to avoid concentrated exposure of fumes, odors, dusts, gases, poor ventilation, etc. (Tr. 272). Dr. Davidson opined postural and communicative limitations were not evident. (Tr. 270-271). After reviewing all the evidence, Dr. Steve Owens affirmed Dr. Davidson's findings on April 27, 2004. (Tr. 274).

On March 10, 2004, Plaintiff sought treatment at the Wadley emergency room. (Tr. 184). Plaintiff reported he fell the previous week on his left shoulder and clavicle. Plaintiff also

requested a prescription for Albuterol as he had run out the previous week. The examiner noted Plaintiff's clavicle looked displaced. X-rays of Plaintiff's shoulder and clavicle were normal. Plaintiff was treated and his arm was placed in a sling.

On February 8, 2006, Plaintiff underwent a general physical examination performed by Dr. Brian T. Oge. (Tr. 242-249). Plaintiff complained of asthma and arthritis in his hands, knee and shoulder. Plaintiff's medication consisted of Albuterol. (Tr. 242). Dr. Oge noted Plaintiff was positive for blurry vision and that alcohol was on Plaintiff's breath. After examining Plaintiff, Dr. Oge diagnosed Plaintiff with asthma, moderate, persistent by history; arthralgias, multiple joints with decreased hand grip bilaterally; and alcohol abuse. Dr. Oge opined Plaintiff had moderate limitations with handling, fingering and heavy lifting. Dr. Oge recommended Plaintiff not have a job with driving or heavy machinery.

On February 28, 2006, Dr. Ronald Crow, a non-examining, medical consultant, completed a RFC assessment stating that Plaintiff could occasionally lift or carry twenty pounds, frequently lift or carry ten pounds; could stand and/or walk about six hours in an eight-hour workday; could sit about six hours in an eight-hour workday; could push or pull unlimited, other than as shown for lift and/or carry; and that postural, manipulative, visual, communicative or environmental limitations were not evident. (Tr. 250-257). After reviewing all the evidence, Dr. Bill F. Payne affirmed Dr. Crow's findings on July 24, 2006. (Tr. 262).

On August 15, 2006, Plaintiff was treated at the Greater Texarkana People's Clinic, Inc., by Ms. Stephanie Hickerson, NP, for asthma. (Tr. 316). Plaintiff reported he had been wheezing increasingly over the last few weeks. Plaintiff reported he had been using his Albuterol inhaler, on average, two times a day. Nurse Hickerson noted Plaintiff smoked one package of cigarettes

a day. Upon examination, Nurse Hickerson noted Plaintiff's lungs were clear to auscultation, and Plaintiff had no respiratory distress. Plaintiff was diagnosed with asthma, NOS and hypertension. Plaintiff was instructed to continue the use of the Albuterol inhaler. Nurse Hickerson also noted she would order Asmanex to be used twice daily. Plaintiff was to follow up in two weeks.

Progress notes dated August 29, 2006, report Plaintiff came in for a blood pressure check. (Tr. 314). He also complained of bilateral knee pain and arthritis. Nurse Hickerson noted Plaintiff continued to have problems with asthma and that Plaintiff had not ordered his asthma medicine yet. Upon examination, Nurse Hickerson noted Plaintiff's lungs were clear to auscultation and that there was no respiratory distress. Plaintiff had full range of motion in all of his extremities and no sign of clubbing or edema. Nurse Hickerson noted Plaintiff did not have motor/sensory deficits and that Plaintiff had a normal gait. Plaintiff was diagnosed with asthma and met with someone in the clinic to get his medication ordered. Plaintiff was to return in three months.

On September 2, 2006, Plaintiff was treated in the Wadley emergency room for a right lower extremity injury. (Tr. 327-336). Plaintiff reported he was unable to bear weight. (Tr. 328). X-rays of Plaintiff's right hip and femur were normal. (Tr. 332). Plaintiff was diagnosed with a hematoma of the right thigh. Plaintiff was to avoid heavy lifting or strenuous activity and instructed not to work for one to two days. (Tr. 329). Treatment notes indicate Plaintiff continued to smoke. (Tr. 330). Plaintiff was to follow up with his primary care provider in two days.

Progress notes dated October 31, 2006, report Plaintiff's complaints of continued pain to his knees and hands; intermittent suprapubic pain; and a bruise to his right thigh that burned

and itched. (Tr. 310). Plaintiff reported he fell from a ladder and caught the inside of his right thigh. Plaintiff denied scrotal pain, at the time, and reported he was sexually active. Plaintiff's medications consisted of Albuterol and Advil. After examining Plaintiff, Nurse Hickerson diagnosed Plaintiff with epididymitis and a scrotal hematoma. Plaintiff was prescribed medication and scheduled for a scrotal ultrasound.

On November 17, 2006, Plaintiff entered the St. Michael emergency room complaining of shortness of breath. (Tr. 287-307). Plaintiff reported his Albuterol was not working. Plaintiff was treated for acute bronchitis and asthma exacerbation. Plaintiff was prescribed medication and discharged home. Plaintiff was also instructed to stop smoking. (Tr. 288).

On January 19, 2007, Plaintiff entered the Wadley emergency room complaining of left shoulder pain/swelling for several months and right side pain. (Tr. 318-326). Plaintiff reported he had been seeing his primary care provider for this pain and that he had been taking over-the-counter medication. Plaintiff was able to take his jacket off and on without distress. Plaintiff also reported some stomach pain. X-rays of Plaintiff's left shoulder revealed mild degenerative changes of the left AC joint. (Tr. 323). Plaintiff was diagnosed with degenerative arthritis and was given a prescription for Toradol.

On September 4, 2007, Plaintiff underwent a consultative examination performed by Dr. Roshan Sharma. (Tr. 337-340). Plaintiff complained of pain all over but more so in his fingers, elbows, shoulders and knees. Plaintiff reported his pain started four years ago. Plaintiff described very severe pain that was aggravated by minor household activities. Plaintiff indicated that lying down decreased his pain. For pain, Plaintiff reported he took Aleve off and on.

Plaintiff reported he smoked one package of cigarettes a day. Plaintiff also reported he had asthma and that he used an Albuterol inhaler.

Upon examination, Dr. Roshan noted Plaintiff had full range of motion of his neck, extremities and all joints. Dr. Roshan noted during the range of motion testing of Plaintiff's major joints, in the upper and lower extremities, there was no pain elicited. Dr. Roshan noted, while Plaintiff did not complain of any lower back pain, he stated he was not able to bend down so no measurements of lumbar flexion or extension were done. Plaintiff reported he could brush his teeth and wash his face. Plaintiff was able to tiptoe, heel walk and tandem walk. Dr. Roshan noted Plaintiff's straight leg raise was normal and no muscle atrophy was observed. Dr. Roshan noted Plaintiff was able to remember two out of three objects for short-term memory. Plaintiff was noted to have difficulty doing simple calculations and could not deduct twenty-five cents from ten dollars. Plaintiff's muscle strength was normal in both upper and lower extremities. Plaintiff's gait was within normal limits. Dr. Roshan's assessment stated "the patient with knee joint pain, pain in elbows and shoulders, exact etiology not known." Regarding Plaintiff's functional status, Dr. Roshan noted Plaintiff was able to stand on one leg and balance and pull up his pants; to walk across the room to have his height and weight checked; and to normally sit-to-stand and supine-to-sit.

Dr. Roshan also completed a Medical Assessment of Ability to Perform Work-Related Activities (Physical). (Tr. 341). Dr. Roshan opined Plaintiff could lift and/or carry up to fifty pounds occasionally, twenty-five pounds frequently; could sit for eight hours out of an eight-hour workday; could stand and/or walk for eight hours out of an eight-hour workday; could frequently simple grasp, fine manipulate, handle objects, feel objects, push/pull/operate hand and foot

-9-

controls and reach; and could occasionally climb, but frequently balance, stoop, crouch, kneel and crawl. Dr. Sharma opined Plaintiff did not have any environmental limitations. Plaintiff also had an unlimited ability to hear and speak.

**III.    Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F.3d 1211, 1217 (8th Cir.2001); see also 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by

medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382(3)(c). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his residual functional capacity. See McCoy v. Schweiker, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920.

**IV.    Discussion:**

Plaintiff contends that the ALJ erred in concluding that the Plaintiff was not disabled. Defendant contends the record supports the ALJ's determination that Plaintiff was not disabled during the relevant time period of July 15, 2001, through March 28, 2008.

**A.    Subjective Complaints and Credibility Analysis:**

We first address the ALJ's assessment of Plaintiff's subjective complaints. The ALJ was required to consider all the evidence relating to Plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) Plaintiff's daily activities; (2) the duration, frequency, and intensity of his pain; (3) precipitating and aggravating factors; (4) dosage,

-11-

effectiveness, and side effects of his medication; and (5) functional restrictions. See Polaski v. Heckler, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. Id. As the United States Court of Appeals for the Eighth Circuit observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." Edwards v. Barnhart, 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the administrative record, it is clear that the ALJ properly evaluated Plaintiff's subjective complaints. Although Plaintiff contends that his asthma and arthritis are disabling, the evidence of record does not support this conclusion.

Plaintiff alleges he suffers from disabling asthma and respiratory impairments. A review of the medical evidence reveals Plaintiff has been diagnosed with asthma that, with the exception of a few flare ups, has been successfully treated with the use of Albuterol. Brace v. Astrue, 578 F.3d 882, 885 (8th Cir. 2009), quoting from Brown v. Barnhart, 390 F.3d 535, 540 (8th Cir. 2004) ("If an impairment can be controlled by treatment or medication, it cannot be considered disabling."). In 2004, Dr. Davidson noted that pulmonary functions tests showed good breathing capacity. Furthermore, in August of 2006, Nurse Hickerson noted Plaintiff's lungs were clear to auscultation, and Plaintiff had no respiratory distress. In November of 2006, Plaintiff was treated for acute bronchitis and asthma exacerbation and he was again instructed to discontinue smoking. The record reveals despite the repeated recommendations to stop smoking, Plaintiff continued to smoke throughout the relevant time period. See Kisling v. Chater, 105 F.3d 1255, 1257 (8th Cir.1997) (noting that a failure to follow prescribed treatment may be grounds for

AO72A
(Rev. 8/82)

denying an application for benefits); Mouser v. Astrue, 545 F.3d 634, 638 (8th Cir. 2008)(where claimant's smoking had a direct impact on his impairments, the ALJ appropriately considered claimant's failure to stop smoking in making his credibility determination).

The medical evidence further reveals Plaintiff has sought treatment for pain in his shoulder, knees and hands. Despite Plaintiff's allegation of severe pain, the record reveals Plaintiff was taking only over-the-counter pain medication. Clevenger v. Social Sec. Admin., 567 F.3d 971, 976 (8th Cir. 2009)(citations omitted)(concluding that an ALJ may reasonably discredit a claimant's testimony about disabling pain when the claimant takes nothing stronger than over-the-counter medications to alleviate her symptoms). Further, on more than one occasion during the relevant time period, Plaintiff was noted to have a full range of motion in all major joints and extremities. There is medical evidence to support Plaintiff's complaints of discomfort due to his arthritis, especially in his right hand; however, the record reveals Plaintiff continued to be able to button buttons and to use his hands, as well as, perform other activities of daily living. Based on the evidence of record, we find substantial evidence to support the ALJ's determination that while Plaintiff's arthritis is severe it is not disabling.

Plaintiff testified that he did not take prescription medication due to the lack of finances; however, Plaintiff has put forth no evidence to show that he has sought low-cost medical treatment or been denied treatment, due to his lack of funds. (Tr. 364). Murphy v. Sullivan, 953 F.3d 383, 386-87 (8th Cir. 1992) (holding that lack of evidence that plaintiff sought low-cost medical treatment from her doctor, clinics, or hospitals does not support plaintiff's contention of financial hardship). Furthermore, the evidence reveals Plaintiff continued to smoke and drink

AO72A
(Rev. 8/82)

alcohol throughout the relevant time period. Clearly, the money Plaintiff used to purchase cigarettes and alcohol could have been used to obtain his medication.

Plaintiff's subjective complaints are also inconsistent with evidence regarding his daily activities. In the most recent Function Report, dated December 8, 2005, completed by Plaintiff, Plaintiff reported he did not do anything from the time he woke up until the time he went to bed because his "joints hurt too bad." (Tr. 74-81). However, in forms completed for previous applications for benefits yet subsequent to his current alleged onset date, Plaintiff reported he could take care of his personal needs, do household chores, shop and do errands, prepare simple meals, count change, walk for errands and exercise, watch television, listen to the radio, attend church and visit with friends and relatives. (Tr. 119-120, 150-151). The evidence, particularly the medical evidence, fails to reveal a change in Plaintiff's condition to substantiate Plaintiff's most current report indicating that he could do very little during the day. Further, at the administrative hearing on June 5, 2007, Plaintiff testified that he was able to ride around with friends, visit with friends and do a little yard work. (Tr. 369).

Therefore, although it is clear that Plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. See Craig v. Apfel, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); Woolf v. Shalala, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled). Neither the medical evidence nor the evidence concerning his daily activities support Plaintiff's contention of total disability. Accordingly, we conclude that

substantial evidence supports the ALJ's conclusion that Plaintiff's subjective complaints were not totally credible.

**B.     RFC Assessment:**

We next turn to the ALJ's assessment of Plaintiff's RFC. RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Guilliams v. Barnhart, 393 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id.

In the present case, the ALJ considered the medical assessments of examining agency medical consultants, Plaintiff's subjective complaints, and his medical records when he determined Plaintiff could perform a full range of light work. The ALJ noted with the exception of mild degenerative changes, x-ray evidence was essentially normal. As late as September of 2007, Dr. Roshan noted Plaintiff was able to stand on one leg and balance; sit-to-stand and supine-to-sit normally; tiptoe, heel walk and tandem walk; and perform full range of motion of

all his major joints in both the upper and lower extremities without pain. Based on the record as a whole, we find substantial evidence to support the ALJ's RFC determination.

**C.     Plaintiff's Past Relevant Work:**

According to the Commissioner's interpretation of past relevant work, a claimant will not be found to be disabled if he retains the RFC to perform:

> 1. The actual functional demands and job duties of a particular past relevant job; *or*
> 2. The functional demands and job duties of the occupation *as generally required by employers throughout the national economy*.

20 C.F.R. §§ 404.1520(e); S.S.R. 82-61 (1982); Martin v. Sullivan, 901 F.2d 650, 653 (8th Cir. 1990)(expressly approving the two part test from S.S.R. 82-61).

Therefore, even though a claimant cannot perform the actual demands of his particular past job, if he can carry out his job as it is generally performed in the national economy, he is not disabled under the regulations. Evans v. Shalala, 21 F.3d 832, 834 (8th Cir. 1994). We note in this case the ALJ relied upon vocational expert testimony in finding Plaintiff able to perform his past relevant work. See Gilbert v. Apfel, 175 F.3d 602, 604 (8th Cir. 1999) ("The testimony of a vocational expert is relevant at steps four and five of the Commissioner's sequential analysis, when the question becomes whether a claimant with a severe impairment has the residual functional capacity to do past relevant work or other work") (citations omitted). Specifically, the vocational expert testified that Plaintiff's past relevant work in housekeeping was considered light, unskilled work. Accordingly, we believe substantial evidence supports the ALJ's conclusion that Plaintiff can return to his past relevant work in housekeeping.

## V. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision denying the Plaintiff benefits, and thus the decision should be affirmed. The undersigned further finds that the Plaintiff's Complaint should be dismissed with prejudice.

DATED this 12th day of February 2010.

/s/ *Erin L. Setser*
HON. ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE

**AO72A**
**(Rev. 8/82)**